**SUN CITY TAXPAYERS'
ASSOCIATION, Plaintiff–
Appellant,**

v.

**CITIZENS UTILITIES COMPANY,
Defendant–Appellee.**

No. 191, Docket 94–7223.

United States Court of Appeals,
Second Circuit.

Argued Sept. 9, 1994.

Decided Jan. 23, 1995.

**60**

Elliot I. Miller, Southport, CT (Kleban & Samor, P.C., Southport, CT, of counsel), for plaintiff-appellant.

Joseph E. Mais, Phoenix, AZ (Anthony L. Marks, Brown & Bain, P.A., Phoenix, AZ, James F. Stapleton, Day, Berry & Howard, Stamford, CT, of counsel), for defendant-appellee.

Before: MESKILL, MAHONEY, and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Sun City Taxpayers' Association ("SCTA") appeals from an order entered February 2, 1994 in the United States District Court for the District of Connecticut, Jose A. Cabranes, then-*Chief Judge*,[1] that dismissed SCTA's civil claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, because: (1) SCTA lacked standing to sue; (2) SCTA's claims were barred by the filed rate doctrine; and (3) SCTA's complaint failed to state a claim under RICO. 847 F.Supp. 281.

We affirm the order of the district court.

## Background

SCTA is an Arizona not-for-profit corporation whose primary purpose, as stated in its articles of incorporation, is:

> To investigate, obtain data, study, and determine the fairness and reasonableness of ... utility charges ... which may be, or proposed to be, either imposed, levied, assessed, charged, or contracted, by ... utilities ... affecting property owners or residents of Sun City, [Arizona,] and to take whatever legal action is deemed fair, reasonable, and otherwise equitable.

Although all ratepayers of Sun City presumably benefit from SCTA's participation in rate-setting procedures, SCTA's membership does not include all present or past ratepayers of Sun City.

Citizens Utilities Company ("CUC") is a Delaware corporation with its principal place of business in Stamford, Connecticut. Sun City Water Company and Sun City Sewer Company (the "Utilities"), which provide water and sewage services to the residents of Sun City, Arizona, are wholly owned subsidiaries of CUC. CUC conducted all rate-setting and related activities on behalf of the Utilities during the years in question.

The Arizona Corporation Commission (the "Commission") is vested by article 15, § 3 of the Arizona Constitution with "full power to ... prescribe ... just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein. . . ." SCTA asserts that between 1968 and 1978, CUC perpetrated a "highly complex accounting fraud" that misrepresented to the Commission the actual operating costs incurred by the Utilities. It is claimed that CUC thus induced the Commission to increase public utility rates by approximately $65 million, which allegedly was paid to CUC as dividends. SCTA intervened in those rate-making proceedings, and now contends that both it and the Commission were misled by CUC's fraudulent representations, resulting in unlawful rate increases that harmed Sun City's residents.

---

1. Chief Judge Cabranes has since become a member of the United States Court of Appeals for the Second Circuit.

SCTA brought suit against CUC under RICO, based upon CUC's alleged misrepresentations to the Commission both on the Utilities' books and in rate-setting applications. SCTA claims that CUC used the United States mails, interstate telephone calls and telecopier transmissions, and other interstate wire facilities to perpetrate the fraud and thereby obtain approval for excessive utility rates in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud). The complaint further alleges that the predicate acts of mail and wire fraud form a pattern of racketeering activity, 18 U.S.C. §§ 1961(1)(B), 1961(5), and constitute violations of 18 U.S.C. § 1962(a), (b), and (c). Consequently, SCTA sought treble damages and attorney fees, as authorized by 18 U.S.C. § 1964(c).

CUC argued below that SCTA lacked standing to bring suit, that the filed rate doctrine bars private RICO actions against regulated utilities based upon alleged fraud in the rate-setting process, and that SCTA's complaint failed to state a RICO claim. The district court so ruled in a comprehensive opinion.

This appeal followed.

## Discussion

### A. *Standing to Sue.*

■ Chief Judge Cabranes concluded that SCTA lacked standing to sue in this case, and we agree with that determination. The district court correctly noted that the postulated injury to SCTA's members did not "adversely affect [their] associational ties." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). SCTA's complaint does not allege that its associational ties with its members have been injured or impaired, but rather focuses solely upon the direct injury to Sun City's residents.

■ Accordingly, Chief Judge Cabranes analyzed SCTA's standing under the test of *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53

L.Ed.2d 383 (1977). Under *Hunt,* even in the absence of injury to its members' associational ties, an organization has standing to sue on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Id.* at 343, 97 S.Ct. at 2441; *see also Warth,* 422 U.S. at 511, 95 S.Ct. at 2211–12 (even in absence of injury to itself, association may have standing solely as representative of its members); *Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 596 (2d Cir. 1993) (stating and applying *Hunt* test).

■ With regard to the third prong of the *Hunt* test, the Supreme Court has explained that an organization lacks standing to sue for money damages on behalf of its members if "the damage claims [of the members] are not common to the entire membership, nor shared by all in equal degree," so that "both the fact and extent of injury would require individualized proof." *Warth,* 422 U.S. at 515–16, 95 S.Ct. at 2214. The district court concluded, and we agree, that SCTA fails the third prong of the *Hunt* test because recovery in this case would require individualized proof by Sun City's residents.

The complaint describes a ten-year period of RICO violations perpetrated through a complex accounting fraud scheme. Presumably, not all of SCTA's members today were living in Sun City during 1968–1978, and each resident's injuries during that period would differ depending upon the amount of utility services consumed and the uses to which those services were put. Consequently, the individual members would be required as parties if this lawsuit were allowed to proceed, and SCTA has no standing to proceed in their absence.

### B. *The Filed Rate Doctrine.*

■ Chief Judge Cabranes also addressed the filed rate doctrine,[2] which this court has more recently considered in *Wego-*

---

2. The district court's ruling that SCTA failed to state a RICO claim was essentially derivative from its determinations that (1) SCTA lacked

standing, and (2) the filed rate doctrine barred any RICO claim.

*land Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir.1994). This doctrine provides an additional basis for dismissal in this case. As we said in *Wegoland:*

> The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable. Simply stated, the doctrine holds that any "filed rate"—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers.

*Id.* at 18. *Wegoland,* like the present case, involved RICO claims, but the filed rate doctrine has been applied in numerous other contexts. *See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 417, 423–24, 106 S.Ct. 1922, 1927, 1930–31, 90 L.Ed.2d 413 (1986) (antitrust); *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 584–85, 101 S.Ct. 2925, 2933–34, 69 L.Ed.2d 856 (1981) (breach of contract); *Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251–53, 71 S.Ct. 692, 695–96, 95 L.Ed. 912 (1951) (fraud); *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156, 162–65, 43 S.Ct. 47, 49–50, 67 L.Ed. 183 (1922) (antitrust).

*Wegoland* was decided after the filing of briefs on this appeal, but prior to oral argument. *Wegoland* ruled that RICO claims premised upon alleged fraud perpetrated by utilities upon a rate-setting agency are barred by the filed rate doctrine. 27 F.3d at 20–22; *accord: Taffet v. Southern Co.*, 967 F.2d 1483, 1494–95 (11th Cir.) (in banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 657 (1992); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 488–92 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992). The fundamental problem is that "only by determining what would be a reasonable rate absent the fraud could a court determine the extent of the damages. And it is this judicial determination of a reasonable rate that the filed rate doctrine forbids." *Wegoland,* 27 F.3d at 21.

*Wegoland* requires affirmance in this case. SCTA attempts to distinguish itself from the "casual plaintiff" in *Wegoland* on the basis that SCTA is a consumer advocacy group whose sole purpose is "to monitor and enforce, through litigation if necessary, the rights of residents and property owners in Sun City to be burdened by no more than fair and appropriate utilities charges." The effort is unavailing.

■ *Wegoland* was not brought by a "casual plaintiff," but rather, as a putative class action that purported to represent the interests of all injured ratepayers. In any event, the filed rate doctrine exists for reasons independent of the type of plaintiff maintaining the action: (1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set utility rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime. *Wegoland,* 27 F.3d at 21.

■ SCTA's goal of vindicating consumer rights simply does not implicate any of the considerations underlying the filed rate doctrine. *See id.* at 22 ("the class action nature of the proceeding in no way affects the important concerns of agency authority, justiciability, and institutional competence"). Thus, we recognized in *Wegoland,* as we do today, that the filed rate doctrine "applies whether or not the plaintiffs are suing for a class," *id.,* and regardless of the plaintiff's motivations in maintaining the litigation.

Moreover, while SCTA purports to represent the rights of all Sun City residents, there is no contractual or statutory vehicle for the equitable payment of any recovery to all affected Sun City ratepayers. *Cf. Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, ——, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992) (criticizing claims that "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts"); *Keogh,* 260 U.S. at 163, 43 S.Ct. at 49–50 ("Uniform treatment would not result, even if all [victims] sued, unless the highly improbable happened, and the several juries and courts gave each the same measure of relief.").

Conclusion

The order of the district court is affirmed.