PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3576
_____

DAWN A. MCCRAY;
WILLIAM H. WILLIAMSON;
DARALICE GRAYO,
on behalf of themselves and all others similarly situated,
*Appellants*

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY;
CHICAGO TITLE INSURANCE COMPANY;
TICOR TITLE INSURANCE COMPANY;
TICOR TITLE INSURANCE COMPANY OF FLORIDA;
SECURITY UNION TITLE INSURANCE COMPANY;
FIDELITY NATIONAL FINANCIAL INC.;
FIRST AMERICAN TITLE INSURANCE COMPANY;
UNITED GENERAL TITLE INSURANCE COMPANY;
TA TITLE INSURANCE COMPANY;
CENSTAR TITLE INSURANCE COMPANY;
FIRST AMERICAN CORPORATION;
COMMONWEALTH LAND TITLE INSURANCE
COMPANY; LAWYERS TITLE INSURANCE COMPANY;
TRANSNATION TITLE INSURANCE CORPORATION;
LANDAMERICA FINANCIAL GROUP INC.;
STEWART TITLE GUARANTY COMPANY;
STEWART INFORMATION SERVICES CORPORATION;
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY; OLD REPUBLIC
INTERNATIONAL CORPORATION;
DELAWARE TITLE INSURANCE RATING BUREAU

_____

On Appeal from the United States District Court
for the District of Delaware

(D.C. No. 1-08-cv-00775)
District Judge: Honorable Stewart Dalzell
———

Argued April 19, 2012

Before: McKEE, *Chief Judge*, SLOVITER, *Circuit Judge*
and O'CONNOR, *Associate Justice* (Ret.)[*]

(Filed: June 14, 2012)
———

Steven J. Greenfogel
Meredith, Cohen, Greenfogel & Skirnick
Philadelphia, PA l9l02

Richard M. Hagstrom   (Argued)
Zelle, Hofmann, Voelbel & Mason
Minneapolis, MN  55415

John S. Spadaro
Hockessin, DE  19707

David R. Woodward
Heins, Mills & Olson
Minneapolis, MN  55403

        Attorneys for Appellants

Kevin J. Arquit
Barry R. Ostrager   (Argued)
Patrick T. Shilling
Simpson, Thacher & Bartlett
New York, NY  10017

David A. Felice
Ballard Spahr
Wilmington, DE  19801

_____

[*] Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

2

Darryl J. May
Ballard Spahr
Philadelphia, PA 19103

Brian T. Feeney
Greenberg Traurig
Philadelphia, PA 19103

Kenneth A. Lapatine
Stephen L. Saxl
James I. Serota
Greenberg Traurig
New York, NY 10166

David M. Foster
Fulbright & Jaworski
Washington, DC 20004

Basil C. Kollias
Cooch & Taylor
Wilmington, DE 19899

John D. Balaguer
White & Williams
Wilimington, DE 19801

David G. Greene
Kevin J. Walsh
Locke Lord
New York, NY 10281

Peter J. Duhig
Buchanan Ingersoll & Rooney
Wilmington, DE 19801

Jennings F. Durand
Carolyn H. Feeney
Dechert
Philadelphia, PA 19104

Jayson R. Wolfgang
Buchanan Ingersoll & Rooney

Harrisburg, PA 17101

Attorneys for Appellees

————

OPINION OF THE COURT
————

SLOVITER, *Circuit Judge.*

Appellants' challenge to the Delaware title insurance program trenches on the challenge raised by other parties to the New Jersey title insurance program, a challenge that we rejected today in our opinion in *In Re: New Jersey Title Insurance Litigation*. The same result follows here to the extent the analysis set forth here unavoidably duplicates that in *In Re: New Jersey Title Insurance Litigation*.

## I.

## Background

Dawn McCray, William Williamson and Daralice Grayo ("Appellants"), on behalf of themselves and similarly situated consumers, appeal the District Court's orders dismissing their federal antitrust claims against numerous Delaware title insurance companies ("Appellees"). Appellants assert that Appellees fixed the prices of title insurance in Delaware in violation of the Sherman Act and seek treble damages and injunctive relief. The District Court held that Appellants' claims are barred by the filed rate doctrine and the McCarran-Ferguson Act. We will affirm the District Court's judgment with respect to the filed rate doctrine and hold that Appellants lack standing to seek injunctive relief.

Title insurers in Delaware are required to file their insurance rates with the state's Department of Insurance ("DOI"). *See* Del. Code Ann. tit. 18, § 2504(a) (2012). Insurers may comply with the state's rate filing requirements through a licensed rating organization. *Id.* §§ 2510-12.

4

Appellee title insurers are members of and file their rates through the Appellee Delaware Title Insurance Rating Bureau ("DTIRB" or "the bureau"), which is licensed by the DOI. "DTIRB claims to obtain, compile, and analyze statistical data from its members relating to their title insurance premiums, losses and expenses." J.A. at 216.

Delaware insurers must propose their own "effective date" for new insurance rates. Tit. 18, § 2504(a). However, they must file those rates with the DOI Commissioner "not less than 30 days prior to the proposed effective date." *Id.* § 2506(c). The Delaware Code requires the Commissioner to "review filings as soon as reasonably possible." *Id.* § 2506(a). The Commissioner must consider various factors to determine whether the rates comport with the law and ensure that the rates are not "excessive, inadequate or unfairly discriminatory." *Id.* § 2503(a). Filings "shall be deemed to meet the statutory requirements unless disapproved by the Commissioner within 30 days." *Id.* § 2506(c). If the Commissioner determines that "additional time is needed to review a rate filing," s/he "shall . . . notify the filer that the review . . . shall be extended" and can extend the review up to ninety days, "unless the insurer . . . agree[s] to a longer term." *Id.*

In addition to rates, the DOI typically requires insurers to "develop and file . . . advisory prospective loss costs and supporting actuarial and statistical data."[1] J.A. at 206. Prospective loss costs are "the portion of a rate that does not include provisions for expenses (other than loss adjustment expenses) or profit, and are based on historical aggregate losses and loss adjustment expenses." *Id.* At DTIRB's request, the DOI temporarily exempted DTIRB's

---

[1] This directive is set forth in Department of Insurance Forms and Rates Bulletin No. 5. Loss Cost Filing Requirements, Forms and Rates Bulletin No. 5 (Dep't of Ins. amended Nov. 27, 1995), http://delawareinsurance.gov/ departments/documents/ bulletins/formbull5.pdf [hereinafter Bulletin No.5]. The DOI Commissioner may issue orders, notices and bulletins regulating Delaware insurance practices. *See* Del. Code Ann. tit. 18, § 312(a)-(c).

members from its "prospective loss costs" and supporting data requirement.[2] In particular, the DOI recognized that "there is no credible historic data, particularly with regard to expenses, that the rating bureau could use in preparing the initial rates." J.A. at 137. It therefore granted the bureau an "exception to the requirements of using the rating format (loss cost) prescribed in Bulletin No. 5." *Id.* Nevertheless, the Commissioner required DTIRB to "have an approved statistical plan in place," that would "enable the [DOI] to monitor rate adequacy," *id.*, which the bureau did until at least 2007.

On October 15, 2008, Appellants filed a class action complaint, alleging that Appellees engaged in collective price-fixing in violation of Section 1 of the Sherman Act.[3] Appellants claim that Appellees used DTIRB as a vehicle for setting uniform rates, which "consist[] of costs unrelated to the issuance of title insurance, including kickbacks and other financial inducements title insurers provide to title agents" and other parties. J.A. at 56. Appellants allege that as a result, the title insurance market is non-competitive and dominated by a relatively small number of insurers.[4] Furthermore, Appellants assert that despite growing profits and efficiencies, Appellees' rates have not changed since 2004.

---

[2] The exemption is set forth in Department of Insurance Forms and Rates Bulletin No. 27. Title Insurance Filing Requirements, Forms and Rates Bulletin No. 27 (Dep't of Ins. Sept. 2, 2010), http://delawareinsurance.gov/ departments/documents/bulletins/ formbull27.pdf [hereinafter Bulletin No. 27].

[3] Appellants also named Appellees' parent companies as defendants and asserted an unjust enrichment claim. The District Court dismissed that claim as well as the parent companies under Federal Rule of Civil Procedure 12(b)(6). *See McCray v. Fidelity Nat'l Title Ins. Co.*, 636 F. Supp. 2d 322 (D. Del. 2009). Appellants do not pursue those claims on appeal.

[4] Appellees allegedly account for about 98 percent of the title insurance premiums paid in Delaware.

6

The District Court dismissed Appellants' complaint under Federal Rule of Civil Procedure 12(b)(6) but granted Appellants leave to amend their request for injunctive relief. Specifically, the court concluded that Appellants' Sherman Act claim is barred by the filed rate doctrine, which precludes antitrust suits challenging rates currently filed with federal or state agencies. *McCray*, 636 F. Supp. 2d at 327 (citations omitted). Because the doctrine does not bar certain injunctive relief claims, the Court granted Appellants leave to amend their complaint, as they "d[id] not describe in much detail the type of injunctive relief they [sought]." *Id.* at 334.

Appellants filed a nearly identical amended complaint, which the District Court also dismissed under Rule 12(b)(6). The Court held that Appellants' injunctive relief claim is barred by Section 1012(b) of the McCarran Ferguson Act, which exempts conduct from antitrust liability if it constitutes the "business of insurance" and is "regulated by state law." *See McCray v. Fidelity Nat'l Title Ins. Co.*, No. 08-775, 2010 WL 3023164 (D. Del. July 29, 2010). The Court determined that Appellees' conduct met both those requirements. Appellants appeal.

## II.

## Discussion

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. This court has appellate jurisdiction under 28 U.S.C. § 1291 and reviews *de novo* the District Court's dismissal of Appellants' initial and amended complaints. *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d 303, 306 (3d Cir. 2004).

A. *The Filed Rate Doctrine*

Appellants argue that the District Court erred by applying the filed rate doctrine to dismiss their damages claims.[5] The District Court invoked the doctrine to dismiss

---

[5] Appellants also argue that District Court erred by applying the filed rate doctrine to dismiss their injunctive relief claim. The District Court correctly observed that the

7

Appellants' demand for: (1) "treble damages as provided by Section 4 of the Clayton Act, 15 U.S.C. § 15," and (2) the return of "overpayments made by [Plaintiffs and the Class] for defendants' title insurance policies." J.A. at 65.

Courts often trace the filed rate doctrine to *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156 (1922). In that case, a shipper alleged that certain railroad carriers conspired to fix freight transportation rates in violation of the Sherman Act. *Id.* at 160-61. The shipper sought damages based on the unusually high rates. *Id.* The Supreme Court, however, denied the shipper's claim because the carriers had filed the challenged rates with the Interstate Commerce Commission ("ICC"), which authorized them. *Id.* at 162. The Court reasoned that it would be improper to hold carriers civilly liable for enforcing rates that the ICC had already approved as legal. *Id.* at 162-63. In addition, the Court expressed a concern about rate discrimination, stating that the shipper's potential damages "might, like a rebate, operate to give him a preference over his trade competitors." *Id.* at 163. Finally, the Court considered the impracticability of awarding damages based on a lower hypothetical rate, which would require "reconstituting the whole rate structure"—a task that the Court viewed the ICC as more competent to handle. *Id.* at 164 ("[I]t is the Commission which must determine whether a rate is discriminatory; at least, in the first instance.").

The Court re-examined the filed rate doctrine in *Square D Co. v. Niagara Frontier Tariff Bureau Inc.*, 476 U.S. 409 (1986). In that case, various corporations alleged that the respondents conspired with their rate making bureau

_____

filed rate doctrine precludes injunctive relief to the extent that such relief "seeks to prevent the defendants from relying on the filed rate." *McCray*, 636 F. Supp. 2d at 334; *see Burlington N., Inc. v. United States*, 459 U.S. 131, 138-42 (1982) (vacating an injunction that ordered a reduction in rates). Because Appellants did not clearly state the type of injunctive relief they sought in their initial complaint and requested only that the "unlawful conduct be enjoined," J.A. at 65, the District Court properly dismissed the claim and granted Appellants leave to clarify their demand for relief.

to fix freight transportation rates in violation of the Sherman Act. *Id.* at 410-11. The petitioners sought treble damages based on the fixed rates. *Id.* at 410. They argued that "unlike *Keogh*, respondents' rates . . . were not challenged in a formal ICC hearing," thereby claiming that the agency's approval was insufficient to trigger the filed rate doctrine. *Id.* at 417; *see also id.* at n.19. Rejecting that argument, the Court reasoned that respondents' rates were "duly submitted, lawful rates under the Interstate Commerce Act in the same sense that the rates filed in *Keogh* were lawful." *Id.* at 417. Therefore, the Court concluded that "petitioners may not bring a treble-damages antitrust action." *Id.*

This court has recognized that the filed rate doctrine "bars antitrust suits based on rates that have been filed and approved by federal agencies." *Utilimax.com*, 378 F.3d at 306 (3d Cir. 2004). Other courts of appeals have also extended the doctrine to rates filed with state agencies. *See, e.g.*, *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20 (2d Cir. 1994) ("[C]ourts have uniformly held, and we agree, that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992) ("[W]e see no reason to distinguish between rates promulgated by state and federal agencies."). Moreover, although the doctrine "has its origins in . . . cases interpreting the Interstate Commerce Act," it "has been extended across the spectrum of regulated utilities." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).

Appellants argue that the filed rate doctrine does not apply to Delaware title insurance rates because the doctrine is limited to comprehensive regulatory regimes, such as the Interstate Commerce Act ("ICA"). Additionally, Appellants emphasize that the interstate commerce industry, among others, no longer requires rate filing and argue that such deregulation "weighs heavily against the district court's first time extension of the doctrine to Delaware's title insurance regime." Appellants' Br. at 19. However, the fact that one industry has been partially deregulated does not mean that the filed rate doctrine is no longer valid in other areas. Because Appellants offer no authority to the contrary, their argument necessarily fails.

9

Appellants further contend that the filed rate doctrine should not apply because "there is no clear repugnancy between the antitrust laws and Delaware's title insurance regulations." Appellants' Br. at 21. That argument, however, is also meritless and requires little attention from this court. As the District Court observed, Appellants' "repugnancy" argument relies on characterizing the filed rate doctrine as a complete bar against antitrust liability. *See McCray*, 636 F. Supp. 2d at 328; *see also Carnation Co. v. Pac. Westbound Conference*, 383 U.S. 213, 217-18 (1966) (recognizing that collective ratemaking activities should not be immunized from antitrust scrutiny unless there is "plain repugnancy between the antitrust and regulatory provisions" (internal quotation marks and citation omitted)). But the doctrine itself does not eliminate "scrutiny under the antitrust laws by the Government and . . . possible criminal sanctions or equitable relief." *Square D*, 476 U.S. at 422. Furthermore, the Supreme Court has stated that it "disagree[s]" with the "view that the issue in *Keogh* . . . is properly categorized as an 'immunity' question," thus making Appellants' repugnancy argument inapplicable. *Id.*; *see also Essential Commc'ns Sys., Inc. v. Am. Tel. & Tel. Co.*, 610 F.2d 1114, 1121 (3d Cir. 1979) ("[T]he filed tariff doctrine does not confer immunity from antitrust liability generally.").

Alternatively, Appellants argue that the filed rate doctrine does not apply because Delaware's title insurance laws do not require the DOI to "meaningfully regulate title insurance rate filings." Appellants' Br. at 22. Appellees, on the other hand, argue that the filed rate doctrine is not limited to situations where the agency has meaningfully regulated or reviewed the challenged rates. Moreover, even if there is such a requirement, Appellees argue that Delaware's title insurance laws are comprehensive enough to warrant the doctrine's application.

To support their "meaningful regulation" argument, Appellants rely on two Ninth Circuit cases—*Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332 (9th Cir. 1990), and *Brown v. Ticor Title Insurance Co.*, 982 F.2d 386 (9th Cir. 1992). In *Wileman*, the plaintiffs claimed that the defendant competing fruit producers had issued unfair marketing standards without authorization from the Secretary of

10

Agriculture. 909 F.2d at 333. Seeking to invoke the filed rate doctrine, the defendants argued that the Secretary "tacitly approved" the challenged standards because he never disapproved them and had the right to do so at any time. *Id.* at 337. However, the court reasoned that in *Square D*, "governmental approval was required before there could be any effect from the collective activity and it was such approval that legitimized the allotments and the rates." *Id.* The court also reasoned that the Secretary's non-disapproval did "not guarantee any level of review" and was "equally consistent with lack of knowledge or neglect." *Id.* at 338. It therefore refused to apply the filed rate doctrine and held that "[t]he mere fact of failure to disapprove . . . does not legitimize otherwise anticompetitive conduct." *Id.* at 337-38.

The Ninth Circuit went a step further in *Brown*. There, the defendant title insurance companies actually filed their rates with regulatory agencies, but the law required "only 'non-disapproval' of the rates" before they became effective "and d[id] not require compliance with strict guidelines." 982 F.2d at 394. Relying on its holding in *Wileman*, the court refused to apply the filed rate doctrine. The court reasoned that "[t]he absence of meaningful state review allows the [defendants] to file any rates they want." *Id.* In addition, the court explained that if the challenged rates "were the product of unlawful activity prior to their being filed and were not subjected to meaningful review by the state, then the fact that they were filed does not render them immune from challenge." *Id.* It therefore concluded that "the act of filing does not legitimize a rate arrived at by improper action." *Id.*

Appellants argue that *Brown* and *Wileman*, along with other district court cases, represent the correct approach to the filed rate doctrine—applying the doctrine only where agencies had to engage in meaningful review of the challenged rates. Although Appellants do not indicate what level of review is necessary, they suggest that the doctrine, at a minimum, does not apply if "[r]ates are collectively set by the insurers themselves and automatically become effective unless disapproved by the agency." Appellants' Br. at 22.

Despite *Brown* and *Wileman*, the Supreme Court has never indicated that the filed rate doctrine requires a certain

11

type of agency approval or level of regulatory review. Instead, the doctrine applies as long as the agency has in fact authorized the challenged rate.[6] As the District Court observed, the relevant statute in *Keogh* only required common carriers to provide ten days public notice before charging new rates, and did not require the ICC to expressly approve such rates before they went into effect. *See* 24 Stat. 381-84 (49th Cong. Feb. 4, 1887). Similarly, the statute in *Square D* did not require the ICC to affirmatively approve freight transportation rates. *See Square D. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1349 (2d Cir. 1985) (characterizing the central issue as "whether *Keogh* . . . has been overruled so far as its language extends to rates filed with but not investigated and approved by the [ICC]"). *Square D* also endorsed the appellate court's statement that the doctrine applies "'whenever tariffs have been filed.'" *Square D*, 476 U.S. at 417 n.19 (citation omitted); *see also Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) (holding that the petitioner "can claim no rate as a legal right . . . other than the filed rate, whether fixed or

---

[6] Appellants argue that interpreting the filed rate doctrine as lacking a "meaningful review" requirement would eradicate the state action doctrine. Under the state action doctrine, private entities participating in state-administered price regulation can assert antitrust immunity if, inter alia, "the State provides active supervision of anticompetitive conduct undertaken by private actors." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 631 (1992). Therefore, "[t]he mere potential for state supervision" is not sufficient to invoke the state action doctrine. *Id.* at 638. However, there is no apparent requirement to reconcile the filed rate and state action doctrines, as courts have generally applied them independently. *See, e.g.*, *Trigen-Okla. City Energy Corp. v. Okla. Gas & Elec. Co.*, 244 F.3d 1220, 1224-25 (10th Cir. 2001) (dismissing claims under state action doctrine and as a result declining to reach filed rate doctrine); *City of Kirkwood v. Union Elec. Co.*, 671 F.2d 1173, 1182 (8th Cir. 1982) (independently analyzing the filed rate doctrine and the state action doctrine). Moreover, the doctrines do not completely overlap because the filed rate doctrine, unlike the state action doctrine, does not provide complete immunity from antitrust liability. *See Essential Commc'ns*, 610 F.2d at 1121.

merely accepted by the [Agency] Commission"). Finally, the First Circuit has held that the filed rate doctrine only requires rates to be filed, not affirmatively approved or scrutinized. *See Town of Norwood v. New Eng. Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) ("It is the *filing* of the tariffs, and not any affirmative approval or scrutiny by the agency, that triggers the filed rate doctrine.").

Indeed, neither this court nor the Supreme Court has suggested that a distinction should exist between agency authorization through "approval" or "non-disapproval" of filed rates. Moreover, in this case such a distinction would be meaningless because the DOI was required to review the challenged rates. Delaware law states that "[t]he Commissioner shall review filings as soon as reasonably possible after they have been made in order to determine whether they meet the [statutory] requirements." Del. Code Ann. tit. 18, § 2506(a). Further, the Commissioner must consider various factors to make sure rate filings are not "excessive, inadequate or unfairly discriminatory." *Id.* § 2503(a). Therefore, even though rate filings are "deemed to meet the statutory requirements unless disapproved by the Commissioner within 30 days," the Commissioner is required to review the rates during that period and may extend the review if "additional time is needed."[7] *Id.* § 2506(c).

Appellants next argue that the filed rate doctrine should not apply because Appellants cannot obtain retroactive relief directly from the DOI. To support this argument, Appellants rely on a series of "price squeeze" cases, which

---

[7] Appellants suggest that the DOI could not genuinely review the challenged rates because DTIRB did not provide sufficient data to support its filings. However, Appellants do not provide any authority showing that the filed rate doctrine is dependent on the thoroughness of an agency's fact-finding. *See Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 402 (7th Cir. 2000) (rejecting the argument that the doctrine should not apply where agencies "rarely exercise their muscle and thus give no meaningful review to the rate structure"). Additionally, since filing its rates in 2004, DTIRB has provided a statistical plan that enables the DOI to monitor the bureau's rate adequacy.

13

hold that the filed rate doctrine is inapplicable if a single regulator does not have authority over the challenged rates and thus cannot grant full relief. *See, e.g.*, *City of Kirkwood*, 671 F.2d at 1178-79; *Borough of Lansdale v. PP & L, Inc.*, 503 F. Supp. 2d 730, 740-42 (E.D. Pa. 2007). Yet, as the District Court held, those cases are irrelevant because the DOI is "fully empowered to regulate the one rate at issue." *McCray*, 636 F. Supp. 2d at 331. Moreover, Appellants fail to present any authority showing that plaintiffs must have access to an alternative regulatory remedy before courts may apply the filed rate doctrine.[8]

Finally, Appellants argue that the filed rate doctrine does not apply because Appellees' filings do not comply with Delaware law. The filed rate doctrine applies to rates "properly filed with the appropriate . . . regulatory authority." *Ark. La. Gas Co.*, 453 U.S. at 577. The Supreme Court explained the properly filed requirement in *Security Services, Inc. v. Kmart Corp.*, 511 U.S. 431 (1994). In that case, the petitioner—a corporation that agreed to deliver goods for Kmart—sued Kmart to enforce the petitioner's filed delivery rates. The Court, however, held that the rates were unenforceable, *see id.* at 444, because they had become "void as a matter of law under the Interstate Commerce Commission's regulations," *id.* at 433. The Court reasoned that the petitioner's rates were "incomplete" and therefore "insufficient to support a reliable calculation of charges." *Id.* at 443. More precisely, the rates included per mile delivery prices, but relied on an outside source to "calculat[e] charges

---

[8] Indeed, Appellants concede that "cases have noted that the availability of an alternative regulatory remedy is not a 'prerequisite' for application of the filed rate doctrine." Appellants' Br. at 28 n.9 (citing *Wegoland, Ltd. v. NYNEX Corp.*, 806 F. Supp. 1112 (S.D.N.Y. 1992)). And in any event, Delaware allows interested parties to challenge insurance rates by making written application to the Commissioner for an administrative hearing. The Commissioner will determine if a hearing is justified, after which the Commissioner may deem the filings "no longer effective." Del. Code Ann. tit. 18, § 2520(a)-(c). At oral argument, counsel for Appellants conceded that they did not administratively challenge DTIRB's rates.

for a given shipment." *Id.* at 433. Because that source was no longer available to the petitioner, the Court concluded that the rates were missing an "essential element," *id.* at 440, and were thus void, *see id.* at 443-44.

Although we have not yet interpreted *Kmart*, other courts have understood the decision to mean that the filed rate doctrine does not apply where: (1) "there is an absence of a calculable rate," *Whitaker v. Frito-Lay, Inc.*, 88 F.3d 952, 961 (11th Cir. 1996); or (2) the rates are void per se under a statutory or regulatory scheme, *see Norwest Transp., Inc. v. Horn's Poultry, Inc.*, 37 F.3d 1237, 1239 (7th Cir. 1994) (finding *Kmart* inapplicable because the regulations at issue did not "make the previously filed tariffs void"); s*ee also Atlantis Express, Inc. v. Associated Wholesale Grocers, Inc.*, 989 F.2d 281, 283-84 (8th Cir. 1993) (applying both factors).

According to Appellants, the filed rate doctrine should not apply under *Kmart* because Appellees' filings "lack essential cost data," which is required under the DOI's regulations. Appellants' Br. at 32. The DOI typically requires insurers to "file . . . prospective loss costs" and supporting data along with their proposed rates. Bulletin No. 5. However, the DOI waived that requirement with regard to Appellees' first rate filings. Bulletin No. 27. Because Appellees never filed additional rates, Appellants assert that the challenged rates no longer conform with the DOI's regulations, making the filed rate doctrine inapplicable. In response, Appellees contend that their failure to file additional rates does not show that the existing "rates were not properly filed" because the DOI "waived loss cost requirements for DTIRB's initial rate filing."[9] Appellees' Br. at 38 (internal quotation marks and citation omitted).

---

[9] Appellees also argue that the DOI's supporting data requirement governs "filings by rating bureaus for lines of insurance *other* than title insurance." Appellees' Br. at 7 n.3. However, nothing in Bulletin No. 5 indicates that the regulation is limited to certain types of insurance. *See* Bulletin No. 5 (stating that the bulletin applies generally to "participating insurers").

Appellees' rates do not fall under the *Kmart* improper filing exception. First, Appellants do not claim that Appellees' filings make it impossible for consumers to calculate the chargeable rates. *See Kmart Corp.*, 511 U.S. at 443. To the contrary, in their complaint, Appellants provide a detailed explanation of DTIRB's title insurance rates and state that "[t]hese uniform rates are set forth in DTIRB's rating manual and on many of defendants' websites." J.A. at 222. In addition, there is no indication that DTIRB's rates are void per se under a statutory or regulatory scheme. *See Norwest Transp., Inc.*, 37 F.3d at 1239. Although the DOI usually requires insurers to accompany their rates with "prospective loss costs" and supporting data, the DOI waived that requirement with respect to Appellants' first rate filing and was permitted to do so under Delaware law. *See* Del. Code Ann. tit. 18, § 2505 ("[T]he Commissioner may, by written order, suspend or modify the requirement of filing as to any kind of insurance . . . ").[10] Furthermore, by requiring Appellees to "have an approved statistical plan in place" that will "enable the [DOI] to monitor rate adequacy," Bulletin No. 27, the DOI complied with its statutory duty to "require the insurer to furnish the information upon which it supports

---

[10] At oral argument, counsel for Appellant argued that Appellees' rate filings are invalid because the Appellees jointly formulated the proposed rates even though Bulletin No. 5 required each insurer to "individually determine and file the rates it will use as a result of its own independent company decision-making process." Bulletin No. 5. However, Bulletin No. 27 "allow[ed] an exception to the requirements of using the rating format (loss cost) prescribed in Bulletin No. 5," which necessarily included the directive to individually determine and file rates. Bulletin No. 27. Indeed, the DOI issued Bulletin No. 5 in order to "specif[y] the framework under which . . . insurers . . . will operate in a loss cost system." Bulletin No. 5. Because that system was temporarily lifted in Bulletin No. 27, Appellants cannot rely on its requirements to insist that Appellants' rate filings are improper. In addition, title 18, section 2501 of the Delaware Code states that, among other things, "[t]he purpose of this chapter is to . . . authorize and regulate cooperative action among insurers in rate making."

16

the filing." Tit. 18, § 2504(b). Overall, Appellees have "properly filed" their rates with the "appropriate . . . regulatory authority," thus justifying the District Court's application of the filed rate doctrine.[11]  *Ark. La. Gas Co.*, 453 U.S. at 577.

B.  *Policies Underlying the Filed Rate Doctrine*

In their reply brief, Appellants argue that the policies underlying the filed rate doctrine do not require its application in this case.  Although we have generally held that "[a]n appellant waives an argument in support of reversal if he does not raise that argument in his opening brief," *AT & T v. FCC*, 582 F.3d 490, 495 (3d Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 1177 (2011), it is well settled that "where an appellee raises a[n] argument not addressed by the appellant in its opening brief, the appellant may reply." *Bennett v. Tucker*, 827 F.2d 63, 69-70 n.2 (7th Cir. 1987). This court may thus consider Appellants' policy argument because Appellees raised it for the first time in their brief.

---

[11] Appellants also argue that the *Kmart* improper filing exception applies because: (1) the DITRB's filings include hidden costs based on "kickbacks and other inducements unrelated to the business of insurance," Appellants' Br. at 32 (internal quotation marks and citation omitted); and (2) the Tenth Circuit addressed a similar situation in *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225 (10th Cir. 2007), and refused to apply the filed rate doctrine, *see* Appellants' Br. at 33.  These arguments are meritless.  With regard to Appellants' "hidden costs" argument, it is well established that "there is no fraud exception to the filed rate doctrine." *AT & T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 535 (3d Cir. 2006).  Thus, the fact that Appellees allegedly hid expenses and engaged in other fraudulent conduct does not make the doctrine inapplicable.  Furthermore, Appellants' second argument is unpersuasive both because *TON Services* is non-binding authority and because the insurers in that case, unlike Appellees, failed to file new rates and failed to file supporting data for existing rates absent legal permission from the regulating agency.  *See* 493 F.3d at 1237.

The filed rate doctrine is designed to advance two "companion principles": (1) "preventing carriers from engaging in price discrimination as between ratepayers," and (2) "preserving the exclusive role of . . . agencies in approving rates . . . by keeping courts out of the rate-making process," a function that "regulatory agencies are more competent to perform." *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998). These "companion principles" are often called the "nondiscrimination strand" and the "nonjusticiability strand." *Id.* The "nonjusticiability strand" recognizes that "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime." *Sun City Taxpayers' Assoc. v. Citizens Utils. Co.*, 45 F.3d 58, 62 (2d Cir. 1995). The "nondiscrimination strand" recognizes that "victorious plaintiffs would wind up paying less than non-suing ratepayers." *Wegoland*, 27 F.3d at 21.

Appellants argue that the nonjusticiability strand does not compel the doctrine's application in this case. More precisely, Appellants claim that nonjusticiability concerns arise only "when there is an *active* regulator." Reply Br. at 6. Here, Appellants claim that the DOI neither "*sets* the rates nor *exercises any meaningful review* of the rates." *Id.* Thus, they contend that the District Court would not interfere with "the regulatory authority of the DOI" by awarding damages based on hypothetical legal rates. *Id.* at 7. Appellees assert that such a damage award would implicate the nonjusticiability strand because it would "second-guess the [DOI's] specialized knowledge." Appellees' Br. at 27.

The nonjusticiability strand supports the doctrine's application in this case. In their initial complaint, Appellants requested treble damages and "returned overpayments" based on Appellees' allegedly inflated title insurance rates. J.A. at 65. To award such damages, the District Court would have to calculate the legal rate but for DTIRB's antitrust violations. That task alone is enough to implicate the nonjusticiability principle, which is primarily concerned with preventing courts from engaging in the ratemaking process. *See, e.g.*,

18

*Montana-Dakota Utils.*, 341 U.S. at 251 (finding that it is not "open to the courts to determine what the reasonable rates during the past should have been"). In addition, the District Court's interference in the rate making process would "subvert the authority" of the DOI by second-guessing its rate determination, thus further implicating the nonjusticiability strand. *Sun City Taxpayers' Assoc.*, 45 F.3d at 62.

The nondiscrimination strand, on the other hand, is not implicated by Appellants' claims. Appellants brought the underlying suit on behalf of "themselves and all others similarly situated." J.A. at 45. Accordingly, it is unlikely that a victory would allow Appellants to pay less than other ratepayers. *See Square D*, 476 U.S. at 423 (noting that "the development of class actions . . . might alleviate the . . . concern about unfair rebates"); *Wegoland*, 27 F.3d at 22 ("[C]oncerns for discrimination are substantially alleviated in [a] putative class action."). Nonetheless, we hold that the filed rate doctrine applies to Appellants' claims based on the nonjusticiability principle alone. *See Marcus*, 138 F.3d at 59 (stating that the doctrine applies "whenever either the nondiscrimination strand or the nonjusticiability strand . . . is implicated").

C. *Standing*

With respect to Appellants' injunctive relief claims, they argue that the District Court erred by concluding that Appellees' "actions are statutorily exempt from antitrust liability pursuant to the McCarran-Ferguson Act."[12] Appellants' Br. at 35. We will not reach this issue because Appellants lack standing to seek injunctive relief.[13]

---

[12] The filed rate doctrine does not bar injunctive relief claims with respect to future rates. *See Square D*, 476 U.S. at 422 & n.28 (noting that the filed rate doctrine precludes antitrust claims for treble damages); Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law: An Analysis of Antitrust Principles and Their Application</u> ¶ 247d (3d ed. 2006) ("[T]here is no reason to think *Keogh* would prohibit an injunction against an antitrust violation attending some tariff that would or might be filed in the future. Such a tariff has not been 'filed' at all."). However, the McCarran-Ferguson

19

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). Article III standing requires "(1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005). "Allegations of 'possible future injury' are not sufficient to satisfy Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (citation omitted). Instead, "'[a] threatened injury must be certainly impending,' and 'proceed with a high degree of immediacy.'" *Id.* (citations omitted). In the context of class actions, Article III standing "is determined vis-a-vis the named parties." *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 306 (3d Cir. 1998).

Appellants lack standing to seek injunctive relief because they failed to allege an injury-in-fact.[14] In their

Act exempts conduct from antitrust liability if it: (1) constitutes "the business of insurance," (2) is "regulated pursuant to state law," and (3) does not "constitute acts of boycott, coercion or intimidation." *Ticor Title Ins. Co. v. FTC*, 998 F.2d 1129, 1133 (3d Cir. 1993) (internal quotation marks and citation omitted).

[13] Although Appellees do not address standing, "we are required to raise issues of standing sua sponte if such issues exist." *Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001) (citing *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

[14] When reviewing a complaint for standing, we determine "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the [court's] jurisdiction." *Reilly*, 664 F.3d at 41 (internal quotation marks and citation omitted).

amended complaint, Appellants "challenge[d] the defendants' collective price-setting of rates . . . as *per se* illegal price-fixing" and sought "injunctive relief . . . due to the significant threat of future losses and injuries resulting from those antitrust violations." J.A. at 213. However, Appellants did not indicate when such "future losses and injuries" will occur. Instead, they vaguely alleged that "[a]s a proximate result of defendants' unlawful conduct, plaintiffs and the Class will suffer future loss or damages in that they will be required to pay supra-competitive prices for title insurance policies." J.A. at 230. Those allegations, taken as true, do not indicate that a named party has "actual or imminent" plans to purchase title insurance. Nor do they establish that DTIRB intends to file new rates in the future.[15] On the contrary, Appellants state in their amended complaint that "[t]here is a remarkable absence of rate changes by title insurers over the past several years," and "Defendants' current rates, for example, have been in place since February 2004 without any change." J.A. at 225. Therefore, because it is "merely speculative" that Appellants' injury will be "redressed by a favorable decision," we lack appellate jurisdiction to address Appellants' injunctive relief claims.

### III.

### Conclusion

For the foregoing reasons, we will affirm the District Court's orders.

---

[15] DTIRB's current rates do not constitute a legal injury under the filed rate doctrine. *Keogh*, 260 U.S. at 163 (stating that "[u]nless and until suspended or set aside, th[e filed] rate is made, for all purposes, the legal rate"); *see also Wegoland*, 27 F.3d at 18 ("[T]he doctrine holds that any 'filed rate' . . . is per se reasonable and unassailable in judicial proceedings brought by ratepayers."). Thus, Appellants must establish standing based on the possibility of future unfair rates.