**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3569
_____

GEORGE E. WARREN LLC,

Appellant

v.

COLONIAL PIPELINE CO;
POWDER SPRINGS LOGISTICS LLC

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-17-cv-01205)
District Judge: Honorable Kevin McNulty

_____

Argued on September 24, 2021

Before: RESTREPO, BIBAS and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 5, 2022)

E. Danya Perry          [**ARGUED**]
Perry Guha LLP
1740 Broadway
New York, New York 10019

Andrew B. Kratenstein
McDermott Will & Emery
One Vanderbilt Avenue
New York, New York 10017

*Counsel for Appellant George E.
Warren, LLC*


Jennifer Quinn-Barabanov          [**ARGUED**]
Shaun M. Boedicker
Mark C. Savignac
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington DC 20036

*Counsel for Appellee Colonial
Pipeline Company*


Robert M. Palumbos          [**ARGUED**]
James H. Steigerwald
Leah A. Mintz
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

Lindsay A. Brown
Duane Morris LLP
1940 Route 70 East
Suite 100
Cherry Hill, NJ 08003

*Counsel for Appellee Powder*
*Springs Logistics, LLC*

---

OPINION OF THE COURT

---

**ROTH**, Circuit Judge:

This case is about who will have the opportunity to maximize profits by blending cheaper blendstock, like butane, into gasoline. George E. Warren LLC is a shipper and blender of gasoline products that ships its gasoline on the pipeline owned and operated by Colonial Pipeline Company. The shipment terms are governed by a tariff approved by the Federal Energy Regulation Commission (FERC). The tariff defines several grades of gasoline by specifying ranges for various characteristics. The parties do not dispute that Warren consistently received on-specification gasoline from Colonial that fully complied with the FERC-approved tariff. Instead, Warren's grievance concerns the purportedly reduced blend margin in the gasoline that it received after shipping it through Colonial's pipeline.

Warren sued Colonial and Powder Springs Logistics, LLC, under the Carmack Amendment[1] for loss resulting from the blending of the gasoline. The District Court found that the filed-rate doctrine precluded Warren's claims against Colonial and Powder Springs. We will affirm.

**I.**

This appeal centers on whether Warren is entitled to a certain "blend margin" in the gasoline that Colonial transports. Colonial operates an interstate pipeline that transports gasoline and other petroleum products. Warren is a shipper that tenders gasoline products to Colonial for shipment on Colonial's pipeline from Texas to New Jersey, where Warren owns and manages a gasoline-blending operation. Colonial, as a common carrier, does not own the products; rather, it simply transports them. The rates, terms, and conditions for the transportation services are specified in the tariffs that Colonial files with FERC and that FERC approves.

The tariff recognizes that the gasoline batches Colonial transports for Warren are fungible, so the tariff allows Colonial to comingle gasoline from many shippers during transport. Still, the tariff requires Colonial to deliver gasoline that meets certain criteria—even though the gasoline received at delivery need not consist of exactly the same molecules that Colonial received from shippers. In short, the tariff requires Colonial to deliver gasoline of the same volume and grade as the gasoline that was first entrusted to it.

---

[1] 49 U.S.C. § 15906.

4

The tariff also requires Colonial to deliver gasoline that is "on specification"—meaning gasoline having "characteristics that [influence] the gasoline's combustion performance, such as the gasoline's octane rating and distillation value, and its environmental impact, such as its volatility, which is measured in terms of its Reid Vapor Pressure[.]"[2] Relevant here, the tariff does not state whether "on specification" gasoline includes any "blend margin."[3]

Gasoline blending is the process of adding different types of gasoline—or "blendstocks"—to a grade of gasoline to create more gasoline that still satisfies the specifications of the tariff.[4] The amount of blendstocks that can be added to gasoline while staying "on specification" depends on the amount of "blend margin" in the gasoline.[5]

The purpose of blending gasolines is to maximize profitability. By blending cheaper gasolines with more expensive ones, the blender can increase the amount of "on specification" gasoline that it can sell and therefore from which it may profit. For example, Warren regularly blends cheaper gasolines with more expensive ones to increase the amount of on-specification gasoline that it can sell, thus, increasing its profit margin.

Blending blendstocks into gasoline flowing through a pipeline is called "in-line blending."[6] In May 2016, FERC

---

[2] App. 13–14 (internal quotation marks and citations omitted).
[3] App. 16.
[4] App. 14.
[5] App. 15.
[6] App. 15.

approved a modification to the tariff that would treat gasoline generated in the pipeline through in-line blending consistently with the gasoline being transported. FERC concluded that the regulation of in-line blending was outside its jurisdiction.

Colonial decided that it, too, could reap the benefits of blending. So Colonial and Magellan Midstream Partners L.P. entered a joint venture and created Powder Springs. Powder Springs exists to blend butane into the product traveling through Colonial's pipeline. After this change to the tariff, Powder Springs began in-line blending, which increased the volume of on-specification gasoline. Powder Springs now sells the excess on-specification gasoline that it creates by in-line blending.

To reiterate, the parties do not dispute that Warren consistently received on-specification gasoline from Colonial. That is, Colonial has always given Warren gasoline that fully complied with the relevant tariff. Warren claims, however, that the gasoline that it receives from Colonial includes limited blend margin. According to Warren, the limited blend margin in the gasoline injures Warren because Colonial's in-line blending diminishes Warren's own ability to blend cheaper blendstocks into the gasoline, which Warren has been doing for years. In other words, Warren wants Colonial to stop in-line blending so that it can optimize its own profitability by blending cheaper blendstocks itself.

So Warren sued Colonial and Powder Springs for loss of profits caused by the diluting of the gasoline product's blend margin. As for Powder Springs, Warren alleged state-law claims, including conversion, unjust enrichment, and tortious interference. The parties moved for summary judgment. The

6

District Court granted summary judgment to Colonial and Powder Springs; it found that the filed-rate doctrine precluded Warren's claims. Warren appealed.

## II.[7]

"The filed-rate doctrine is a set of rules that have evolved over time but revolve around the notion that . . . utility filings with the regulatory agency prevail over . . . other claims seeking different rates or terms than those reflected in the filings with the agency."[8] The filed-rate doctrine advances two key purposes: "nondiscrimination" and "nonjusticiability."[9] The nondiscrimination goal is to "prevent[ ] carriers from engaging in price discrimination as between ratepayers."[10] The principle recognizes that in the doctrine's absence, "victorious

---

[7] We have subject-matter jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo, applying the same standard the district court would use. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 176 (3d Cir. 2019); *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019). Summary judgment is appropriate only if the movant shows that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a).

[8] *Breiding v. Eversource Energy*, 939 F.3d 47, 52 (1st Cir. 2019) (omissions in original) (quotation marks omitted) (quoting *Town of Norwood v. FERC*, 217 F.3d 24, 28 (1st Cir. 2000)).

[9] *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 241–42 (3d Cir. 2012) (quotations and citation omitted).

[10] *Id.* at 241.

plaintiffs would wind up paying less than non-suing ratepayers."[11]

By contrast, the nonjusticiability principle involves the federal courts' respect for a regulatory agency's institutional competence. As we explained, "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime."[12] Thus, we have noted that the doctrine has an "expansive reach."[13]

When an agency—like FERC—defines tariffs, the filed-rate doctrine instructs that tariffs "cannot be varied or enlarged by either contract or tort of the carrier. And they are not affected by the tort of a third party."[14] "[T]he doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand

---

[11] *Id.* at 242 (quoting *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 21 (2d Cir. 1994)).

[12] *Id.* (alteration in original) (citation omitted).

[13] *See, e.g.*, *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 532 n.10 (3d Cir. 2006); *see also Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007) (noting that the filed-rate doctrine is a "fortification against direct attack" that "is impenetrable").

[14] *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 416–17 (1986) (citation omitted).

underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue."[15]

## III.

We will affirm the District Court's grant of summary judgment because Warren's request seeks an enlargement of its rights under the FERC-approved tariff and therefore violates the filed-rate doctrine. Specifically, we conclude that Warren's claims against Colonial are barred by the filed-rate doctrine's nondiscrimination principle. Warren's appeal turns on whether it is entitled to a particular blend margin under the tariff. The tariff does not entitle Warren to any blend margin. Instead, the tariff entitles Warren only to on-specification gasoline of the same grade and volume as it first entrusted to Colonial. No one disputes that Warren has always received on-specification gasoline from Colonial that complied with the relevant tariffs. Thus, Warren's request for a specific amount of blend margin is a request for an enlargement of its rights under the tariff. That is, Warren seeks treatment under the tariff that differs from how Colonial could treat any other gasoline shipper.

Although Warren contends that awarding it damages would not lead to discrimination because it "would 'still pay the filed rate' for the transportation services it receives,"[16] court-awarded damages would effectively amount to an after-the-fact discount or a rebate from the FERC-approved tariff

---

[15] *Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 489 (8th Cir. 1992)).

[16] Appellant Br. at 43.

9

rate. In turn, that would permit Warren to pay different rates for the same service as similarly situated shippers who did not sue.[17] That result is impermissible under the filed-rate doctrine.

In addition, Warren asserts that Colonial's decision to reduce blend margin by using in-line blending falls outside FERC's regulatory oversight. Thus, it is "non-jurisdictional"— it falls beyond the scope of the tariff. To be sure, Colonial concedes that in-line blending is outside FERC's jurisdiction. Yet that is irrelevant. As the District Court correctly concluded, the nature of the defendants' conduct, *i.e.*, the in-line blending, does not control whether the filed-rate doctrine applies.[18] Rather, the doctrine applies if either the nondiscrimination or nonjusticiability strand is implicated. The tariff is clear that so long as a shipper receives gasoline that falls within the specifications defined by the tariff—even if some of the gasoline's attributes differ from the gasoline first entrusted to Colonial—then the tariff's requirements are met. To recognize that Warren has a right to receive gasoline with a high blend margin to allow for downstream blending amounts to the creation of a right not contemplated by the FERC-approved tariff. Accepting Warren's argument would undermine the filed-rate doctrine's nondiscrimination principle. For that reason, we must reject it. We will therefore affirm the judgment of the District Court.

---

[17] *See Marcus*, 138 F. 3d at 60 ("Plaintiffs who were able to prove their claims and recover damages would effectively receive a discounted rate for phone service over other AT&T customers.").

[18] *See Marcus*, 138 F.3d at 58.

10

Although the District Court declined to address whether Warren's claims are also barred under the filed-rate doctrine's nonjusticiability principle, we recognize that Warren's claims run afoul of that filed-rate-doctrine principle too. The nonjusticiability strand arises from the federal courts' respect for Congress's decision to entrust the regulation of certain common carriers to agencies with institutional competence— here, FERC. The nonjusticiability strand "prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority." [19] As we have said, the "courts are ill-equipped to engage in the rate making process."[20] As for Warren's claims, we find persuasive the United States Court of Appeals for the First Circuit's decision in *Breiding v. Eversource Energy*.[21]

In *Breiding*, the court rejected a challenge by retail electricity customers that alleged that defendants took advantage of the applicable pipeline tariff by "strategically reserv[ing] excess capacity along the Algonquin Gas pipeline without using or reselling it," which ultimately caused spikes in natural gas prices.[22] This in turn "resulted in higher retail electricity rates."[23] The court concluded that the filed-rate doctrine barred plaintiffs' claims because the "tariff sa[id] nothing that would *require* [defendants] to release excess

---

[19] *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004) (quoting *Marcus*, 138 F.3d at 61).

[20] *Leo v. Nationstar Mortg. LLC*, 964 F.3d 213, 215 (3d Cir. 2020) (quoting *In re N.J. Title Ins. Litig.*, 683 F.3d 451, 457 (3d Cir. 2012)).

[21] 939 F.3d 47 (1st Cir. 2019).

[22] *Id.* at 49.

[23] *Id.*

capacity along the Algonquin pipeline to other users."[24]  Thus, the court held that, because the defendants did not engage "in any conduct other than that allowed by Algonquin's detailed and reasonably comprehensive FERC-approved tariff"[25] and because FERC expressly declined to require direct purchasers to release excess capacity, "[t]he filed-rate doctrine prohibits [the court] from questioning that reasoned judgment."[26]

Similarly, Warren's claims would violate the nonjusticiability principle because the claims seek an impermissible judicial interference in the rate-making process. Warren is asking us to compensate it for a sufficient blend margin even though FERC did not write any blend margin requirement into the tariff's specifications.  That would undermine FERC's authority.  Likewise, granting an injunction stopping defendants from in-line blending would effectively overrule or, at the very least, improperly limit FERC's authority to set whatever specifications it sees fit.

## IV.

In addition to granting summary judgment to Colonial, the District Court also granted summary judgment to Powder Springs.  It found that Warren's state-law tort claims against Powder Springs amounted to a back-door way for Warren to circumvent the filed-rate doctrine.  We will also affirm the District Court's order granting summary judgment to Powder Springs.  The Supreme Court indicated in *Square D Co. v.*

---

[24] *Id.* at 54 (emphasis in original).
[25] *Id.*
[26] *Id.* at 54–55.

12

*Niagara Frontier Tariff Bureau, Inc.*[27] that tort claims against a third party are precluded by the filed-rate doctrine when those claims attempt to enlarge a party's rights under a tariff. Warren's claims against Powder Springs are exactly that: a collateral attack on the amount of blend margin it receives from Colonial. Because the tariff does not guarantee Warren any blend margin, the state-law-tort claims amount to a challenge to Warren's rights under the tariff. Thus, the filed-rate doctrine precludes Warren's claims against Powder Springs.

## V.

To the extent Warren has been wronged by Colonial's in-line blending, that wrong is not one that we can remedy. Warren's real grievance is with the specifications included in the tariff. If the tariff had regulated blend margin, Warren's dispute would not have arisen. Congress empowered FERC to regulate common carriers like Colonial and to set the rates in tariffs. If the tariff at issue here needs refinement, FERC should decide that—not us—as it is outside our authority and expertise.

For the above reasons, the District Court's order granting summary judgment to Colonial and Powder Springs will be affirmed.

---

[27] 476 U.S. at 416–17.