**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2998
_____

KELLY J. SINICO,
                                        Appellant

v.

COMMONWEALTH OF PENNSYLVANIA; SALLY A. BARRY, Director of
Probation Services for the County of Lebanon; SUSAN CHRISTNER, Deputy Director
of Probation Services Juvenile Unit for the County of Lebanon; DWIGHT PENBERTH,
Supervisor of Juvenile Unit for the County of Lebanon, in their official and individual
capacities; JOHN C. TYLWALK
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-18-cv-01259)
District Judge:  Honorable Jennifer P. Wilson
_____

Argued July 14, 2023

Before:  PHIPPS, MONTGOMERY-REEVES, and MCKEE, *Circuit Judges*.

(Opinion filed:  February 9, 2024)
_____

Andrew W. Muir **[ARGUED]**
Law Office of Andrew W Muir
560 Van Reed Road, Suite 307
Wyomissing, PA 19610

        *Counsel for Appellant*

Robert J. Krandel **[ARGUED]**

Geri R. St. Joseph
Supreme Court of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

     *Counsel for Appellees in their official capacities*

Christopher L. Scott **[ARGUED]**
Thomas, Thomas & Hafer
225 Grandview Avenue, Fifth Floor
Camp Hill, PA 17011

     *Counsel for Appellees Sally A. Barry, Susan Christner, and Dwight Penberth in their individual capacities*

_____

OPINION[*]

_____

MONTGOMERY-REEVES, *Circuit Judge*.

Kelly J. Sinico appeals the District Court's grant of summary judgment on claims that she brought under the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("Rehab Act"). We review that judgment for plain error because Sinico did not object to the Magistrate Judge's report and recommendation ("R&R"), which the District Court adopted without modification. Applying that deferential standard of review, we will affirm because Sinico has failed to show that the District Court made a clear and obvious error by granting summary judgment.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## I.  BACKGROUND[1]

### A.  Sinico Requests Medical Leave

Sinico worked as a juvenile probation officer for the Court of Common Pleas of Lebanon County ("County Court").  Her job duties included visiting juveniles who were under court supervision and timely updating their case files in the County Court's Juvenile Case Management System.

From January 2017 to May 2017, Sinico took intermittent leave on more than a dozen occasions to receive infertility treatments and other medical care.  The goal of these medical appointments was for Sinico to undergo an embryo-transfer procedure.

On Monday, June 5, 2017, Sinico texted her direct supervisor, Dwight Penberth, and told him that her embryo-transfer procedure had been scheduled for the coming Saturday, June 10.  Sinico explained that she would need to be on bedrest for 48 hours after the procedure, would be restricted to "minimal movements" for another 48 hours, and then might be able to return to work on "light duty" for the next week and a half, depending on the results of some bloodwork.  J.A. 735.

The next day, Sinico met with Penberth and asked if she could take two weeks off from work following her embryo-transfer procedure.  Penberth told Sinico that he "needed [her] in the office" on those dates because two other employees would be out on scheduled vacations.  J.A. 633.  Penberth mentioned, however, that Sinico could submit a

---

[1] We write for the benefit of the parties and recite only essential facts.

doctor's note to the human resources department if she needed to take medical leave. It does not appear that Sinico submitted a doctor's note in response.[2]

On June 10, Sinico underwent the embryo-transfer procedure. She returned to work four days later.

### B.    Tylwalk Terminates Sinico

In May 2017, supervisors conducted a review of case files for several probation officers, including Sinico, which was standard practice. The review was supposed to cover the past 30 days. But supervisors decided to extend Sinico's review period further back after "discover[ing] multiple issues" with her case files. App. 897.

On or about May 26, 2017, supervisors completed their review of Sinico's case files. Among other things, the review found that Sinico had not updated most of her case files since March 2017, her case files were rife with errors,[3] and she did not properly record a majority of her visits with juveniles.

This was not the first time that Sinico failed to keep timely and accurate records. In December 2014, supervisors gave Sinico a written warning for failing to properly update her case files and other records. And while Sinico received a positive annual

---

[2] Also around this time, Sinico asked Penberth if he could arrange for a "less stressful environment," though they did not "discuss any accommodations as far as implementing anything." J.A. 636.

[3] One of Sinico's case files erroneously indicated that a juvenile had been released from placement even though that had not occurred. Sinico testified that she preemptively recorded that the juvenile was released from placement because she assumed that the juvenile would pass a drug test and forgot to update the juvenile's case file after he failed the drug test and remained in placement.

review in April 2017, that annual review "reminded [Sinico] to remain diligent regarding recording [sic] keeping within the case management system." J.A. 146. Sinico also had a history of other disciplinary infractions, including a written warning for providing fast food to a juvenile after another officer forbade it, a three-day suspension and multi-month probationary period for unprofessional conduct, and a counseling session addressing negative comments Sinico made in public about a third-party service provider.

On June 7, Penberth and Susan Christner, deputy director of probation services for the juvenile unit, met with Sinico to discuss the case-file review. The next day, Christner exchanged emails with Sally A. Barry, director of probation services, about Sinico's case-file review and history of disciplinary issues. Among other things, Barry wrote that she "would not argue [Sinico's] commitment to her kids" but Barry "h[ad] significant issues with [Sinico's] continuous failure to follow department policy." J.A. 391. Christner suggested, "at a minimum," that Sinico be demoted. *Id.* Barry responded that she was "thinking termination." *Id.*

On June 20, Barry met with John C. Tylwalk, president judge of the County Court, to discuss Sinico's disciplinary issues. Tylwalk had the ultimate authority to hire and fire employees in the probation office, including Sinico. After discussing the results of the case-file review and Sinico's disciplinary history, Tylwalk decided to terminate Sinico.

Ten days later, on June 30, Barry and Christner met with Sinico and told her that she could either resign or be fired. Sinico resigned.[4]

### C. The District Court Grants Summary Judgment

After purportedly exhausting her administrative remedies, Sinico filed her operative complaint in the District Court. The complaint brought claims under the FMLA, the ADA, and the Rehab Act against the Commonwealth of Pennsylvania, Barry, Christner, Penberth, and Tylwalk (collectively, "Appellees") for allegedly denying Sinico's request for leave, terminating her employment for an improper reason, and failing to make reasonable accommodations.

On September 9, 2022, the Magistrate Judge issued an R&R suggesting that the District Court grant Appellees summary judgment on all counts. The Magistrate Judge also provided a notice (1) informing the parties that they had 14 days to object under Local Rule 72.3 for the United States District Court for the Middle District of Pennsylvania, and (2) cautioning the parties that failing to timely object "may constitute a waiver of any appellate rights." *Sinico v. County of Lebanon*, No. 1:18-cv-01259, 2022 WL 16552784, at *22 (M.D. Pa. Sept. 9, 2022). None of the parties objected, and on September 26, the District Court adopted the R&R without modification and granted Appellees summary judgment. Sinico appealed.

---

[4] On a day toward the end of June 2017, Sinico smelled "strong paint fumes" in her office. J.A. 659. Sinico complained about the fumes to Christner, who suggested that Sinico open a window and change offices. This did not fix the problem. But Sinico could not recall telling anyone that the fumes were still bothering her.

## II.     STANDARD OF REVIEW[5]

As a threshold matter, the parties dispute the appropriate standard of review.  We normally review a district court's grant of summary judgment de novo.  *See, e.g.*, *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995)).  But "[i]f a party fails to object timely to the magistrate judge's report and recommendation, we generally review the district court's order for plain error."  *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (collecting cases).

Sinico did not object—timely or otherwise—to the Magistrate Judge's R&R.  Nonetheless, Sinico argues that we should excuse her failure to object because the District Court purportedly did not notify her or her counsel of the R&R.  We could resolve this issue on forfeiture grounds, as Sinico did not make this argument in her opening brief.  *See, e.g.*, *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017) ("As a general matter, an appellant [forfeits] an argument in support of reversal if it is not raised in the opening brief." (citing *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012))).  But even if Sinico had made this argument in her opening brief it would not make a difference.

Sinico concedes that on October 3, 2022, she "glanced at the docket . . .[,] read the R&R[,] and requested her counsel prepare the appeal to this Court."  Reply Br. 3.  At that

---

[5] The District Court had jurisdiction over Sinico's claims under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

point, Sinico could have raised her concern with the District Court if she wanted to preserve an argument for de novo review on appeal. *See* Fed. R. Civ. P. 60; Fed. R. App. P. 4(a)(4)(A)(vi). But Sinico chose a different path, waited 21 days, and filed a timely notice of appeal on October 24. Because Sinico could have raised this issue below and chose not to do so, we see no reason to excuse her failure to object. *See, e.g.*, *Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007) ("[P]lain error review promotes the effectiveness and efficiency of the lower courts by compelling parties to promptly contest dispositive issues before the magistrate judge and district judge."). Thus, we will apply the plain-error standard of review to the District Court's grant of summary judgment.

To satisfy the plain-error standard, Sinico must show that the District Court made "(1) an error, (2) that is plain—i.e., clear and obvious," and (3) which "affected [Sinico's] substantial rights." *Forrest v. Parry*, 930 F.3d 93, 113 (3d Cir. 2019) (collecting cases). "Even then, we exercise our power to reverse 'sparingly'—that is, only for 'serious and flagrant' errors jeopardizing 'the integrity of the proceeding.'" *Id.* (quoting *Pa. Envt'l Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 234 (3d Cir. 1998)). "We may affirm on any basis supported by the record, even if it departs from the District Court's rationale." *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019) (citing *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1089 & n.10 (3d Cir. 1988)).

## III.   DISCUSSION[6]

Sinico argues that the District Court erred by granting Appellees summary judgment on the interference, wrongful-termination, and failure-to-accommodate claims that she brought under the FMLA, the ADA, and the Rehab Act.  We address her claims below.

### A.     The Interference Claim

Sinico claims that Appellees interfered with her rights under the FMLA by denying her request to take two weeks off from work following her embryo-transfer procedure.

When the need to take leave "is foreseeable based on planned medical treatment," an employee generally must "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave."  29 U.S.C. § 2612(e)(2)(B).  But "[i]f 30 days [sic] notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency," an employee must provide notice "as soon as practicable."  29 C.F.R. § 825.302(a); *see also* 29 U.S.C. § 2612(e)(2)(B).

The District Court held that Sinico failed to provide adequate notice because she knew "the general timing of the [embryo-transfer] procedure and her need for leave . . .

---

[6] Because the District Court adopted the R&R without modification, the following discussion attributes the Magistrate Judge's analysis to the District Court.

well before" she met with Penberth on June 6, 2017, and, thus, did not provide such notice as was practicable under the circumstances. *Sinico*, 2022 WL 16552784, at *11.

Sinico argues that the District Court's analysis was wrong because "[n]othing in the case record indicates [she] knew the general timing of when or if an embryo transfer would take place . . . before June 6[]." Opening Br. 17. But Sinico's argument flips the burden of proof. It was *Sinico's* burden to prove that she gave adequate notice of her intention to take leave. *See Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) ("To make a claim of interference under the FMLA, a plaintiff must establish . . . [that] the plaintiff gave notice to the defendant of his or her intention to take FMLA leave." (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)) (citing *Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006))). And since there is no dispute that Sinico did not provide at least 30 days' notice, it was her burden to prove that she provided notice "as soon as practicable." 29 C.F.R. § 825.302(a); *see also* 29 U.S.C. § 2612(e)(2)(b).

Notice remains practicable so long as a plaintiff knows "approximately" when his or her leave must begin. 29 C.F.R. § 825.302(a). While there is evidence that Sinico did not know the precise date her transfer would occur, Sinico has not identified any evidence suggesting that she could not have foreseen the *approximate* timing of her embryo transfer earlier than June 6. Given this absence of proof, it is neither clear nor obvious that Sinico adduced evidence that she provided notice of her need to take leave

10

as soon as was practicable. Accordingly, the District Court did not plainly err by granting Appellees summary judgment on the FMLA-interference claim.[7]

## B.  The Wrongful-Termination Claims

Sinico claims that Appellees violated the FMLA, the ADA, and the Rehab Act by terminating her because she had an infertility disability, because she requested medical leave, and because she requested reasonable accommodations. The *McDonnell Douglas* burden-shifting framework applies to retaliation and discrimination claims under the FMLA,[8] the ADA,[9] and the Rehab Act.[10] When applying that framework, the plaintiff bears the initial burden to establish a prima facie claim of discrimination or retaliation. *See, e.g.*, *Samuel Grossi & Sons*, 49 F.4th at 346. If the plaintiff establishes a prima facie claim, the burden of production shifts to the employer to "present[] a legitimate . . . reason for having taken the adverse action." *Id.* (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)). If the employer does so, the burden of production

---

[7] We express no view on the District Court's analysis of whether Sinico's infertility constituted a serious health condition under the FMLA.

[8] *See, e.g.*, *Lichtenstein*, 691 F.3d at 301–02 (applying burden-shifting framework to FMLA-retaliation claim).

[9] *See, e.g.*, *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346–47 (3d Cir. 2022) (applying burden-shifting framework to ADA-retaliation claim); *Fowler v. AT & T, Inc.*, 19 F.4th 292, 298–99 (3d Cir. 2021) (applying burden-shifting framework to ADA-discrimination claim).

[10] *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) ("The 'substantive standards for determining liability [under the ADA and Rehabilitation Act] are the same.'" (alterations in original) (quoting *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995))).

11

shifts back to the plaintiff to identify evidence that the employer's proffered explanation "is merely a pretext, meaning evidence that could cause a jury 'either to (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Fowler*, 19 F.4th at 299 (cleaned up) (quoting *Walton v. Mental Health Assoc. of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999)).

Even if we assume that Sinico has established a prima facie claim of discrimination or retaliation, Appellees have carried their burden of production, under step two of the *McDonnell Douglas* framework, to offer a legitimate justification for terminating Sinico given her repeated failure to timely and accurately update case files. Thus, the burden of production shifts back to Sinico to show pretext. To carry that burden, Sinico must adduce evidence that would "allow a factfinder reasonably to infer that . . . [Appellees'] proffered [legitimate] reasons . . . w[ere] either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (some alterations in original) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). And because we review the District Court's judgment for plain error, it must be clear and obvious that Sinico has adduced evidence of pretext.

Sinico offers five main arguments for why the work-related reasons Appellees provided for her termination were pretextual. None show that Sinico has clearly and obviously adduced evidence of pretext.

First, Appellees promoted Sinico's non-disabled supervisor, Penberth, even though he had a history of failing to timely submit his "daily logs." J.A. 767. Sinico argues that Penberth's promotion reveals that Appellees did not really care about recordkeeping deficiencies, so they must have terminated her for another reason. There is no dispute, however, that the daily logs Penberth failed to timely submit were qualitatively different from the case files that Sinico failed to properly update: The case files Sinico failed to timely update were official court records that judges relied on when making decisions about juveniles in the probation system. The daily logs Penberth failed to timely update were internal documents used by the probation officers and their managers, not official court records. Thus, it is neither clear nor obvious that Penberth's promotion can show pretext.

Second, Sinico argues that her recordkeeping deficiencies were not sufficiently egregious to warrant termination, so Appellees must have terminated her for another reason. The pretext inquiry addresses "whether discriminatory animus motivated the employer, not whether the employer [was] wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765 (collecting cases). Thus, it is not enough for Sinico to "show that [her] employer's decision was wrong or mistaken." *Id.* (collecting cases). Sinico "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [her] employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that [her] employer did not act for [the asserted] [legitimate] reasons.'" *Id.* (cleaned up) (first quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir.

13

1992); and then quoting *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)).

Sinico identifies no such defects with the recordkeeping deficiencies that Appellees cited as the primary reason for her termination. For instance, one of Sinico's case files stated that a juvenile had been released from placement even though that had not occurred. When asked about the discrepancy, Sinico explained that she preemptively recorded that the juvenile had been released from placement because she assumed—incorrectly—that the juvenile would pass a drug test and forgot to update the juvenile's case file when he failed the drug test and remained in placement. Supervisors claimed that this was a serious incident of misconduct because Sinico falsified a court record.

On appeal, Sinico responds that this characterization "blows out of proportion the allegations levied against [her]" because she simply made "[a] bad guess" and "would not [have] derive[d] any benefit from making the error." Opening Br. 24–25. But a bad guess is, by definition, wrong. That Sinico guessed at all means she knew the juvenile had not been released from placement when she falsely recorded that as having occurred. And Sinico concedes that she derived at least some benefit from making this bad guess, as it allowed her to work ahead. Thus, it is neither clear nor obvious that Sinico has identified any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions with Appellees' conclusion that she falsified a court record. *Cf. Fuentes*, 32 F.3d at 765. And there is no dispute about the broader proposition that Sinico failed to timely and accurately update case files.

14

Third, Sinico asserts that recordkeeping deficiencies cannot be the real reason why Appellees terminated her because she made similar mistakes in the past and kept her job. We see no reason to infer that giving Sinico a second chance in the past granted her a license to break the same rules in the future. And the written admonishments Sinico received consistently noted that future infractions could warrant further disciplinary action, including termination. Thus, it is neither clear nor obvious that Sinico's history of escaping termination despite violating work rules can show pretext.

Fourth, Sinico argues that because she received a positive annual review in April 2017, it is implausible that Appellees decided to terminate her for work-related reasons a few weeks later, in June 2017. But the case-file review that led to Sinico's termination was dated May 26, 2017, more than a month *after* the annual review was finalized. Accordingly, there is no reason to infer that the manager who completed Sinico's annual review knew about the recordkeeping deficiencies that the yet-to-be-conducted May 2017 case-file review would identify. Moreover, the annual review "reminded [Sinico] to remain diligent regarding recording [sic] keeping within the case management system" and praised Sinico's "*improvement* [in] keeping case notes up to date." J.A. 146 (emphasis added). The May 2017 case-file review revealed that Sinico failed to heed that reminder and reverted to her old practice of neglecting to keep timely and accurate records. Thus, if anything, the annual review suggests that Appellees' concern about recordkeeping deficiencies was not pretextual because managers continued to remind Sinico about the importance of keeping timely and accurate records even when

15

they praised her. As such, it is neither clear nor obvious that Sinico's April 2017 annual review can show pretext.

Fifth, and finally, Sinico argues that the two-week delay between when managers completed their case-file review on or about May 26, 2017, and when managers first met with Sinico, on June 6, to discuss the results suggests that Appellees either backdated the case-file review or exaggerated their concern about the state of Sinico's case files. Sinico cites no evidence to support either assertion. And based on the record as a whole, it is neither clear nor obvious that this two-week delay supports a reasonable inference that Appellees were not genuinely concerned about Sinico's repeated and pervasive failure to timely and accurately update case files.[11]

---

[11] Sinico raises three more arguments that warrant only short responses. First, Sinico claims that she adduced evidence that Appellees "ha[d] a propensity for animosity towards persons suffering from disabilities." Opening Br. 23. Sinico bases this argument on (1) an email thread from March 2021 in which Barry stated that Sinico "[c]ontinues to really irritate me," and Christner likened Sinico to a "gnat," J.A. 840; and (2) a sarcastic award that Christner presented to Sinico for submitting an error-free report, which Sinico claims to have "ridiculed [her] for suffering from dyslexia," Opening Br. 23. Neither point is persuasive. Barry and Christner sent the emails in question nearly four years *after* Appellees terminated Sinico. And while the content of the emails might suggest that Barry and Christner held some personal animus against Sinico, the emails do not mention Sinico's infertility, requests for leave, requests for accommodations, or another protected characteristic. Thus, it is neither clear nor obvious how these emails can show pretext. It is also neither clear nor obvious how an award that purportedly mocked Sinico for being dyslexic can show pretext considering that Sinico did not plead dyslexia as a basis for any of her claims. And Sinico cites no other evidence to support her assertion that Appellees had a culture of mistreating employees based on disability or other protected characteristics.

Second, Sinico argues that because she purportedly can establish the causation element of her prima facie claim based on "an 'unusually suggestive' temporal proximity" between when she requested leave and when Appellees decided to terminate her, she also has

Accordingly, for the reasons provided above, Appellees are entitled to summary judgment on the discrimination and retaliation claims that Sinico brought under the FMLA, the ADA, and the Rehab Act because it is neither clear nor obvious that Sinico adduced evidence of pretext.

## C.    The Failure-to-Accommodate Claims

Sinico claims that Appellees violated the ADA and the Rehab Act by denying her requests for reasonable accommodations related to her infertility disability. To prevail on her failure-to-accommodate claims, Sinico must show, among other things, that: "(1) [she] was disabled and [her] employer knew it; (2) [she] requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to

---

shown pretext. Opening Br. 27. Sinico is correct that "there is nothing preventing" a plaintiff from using evidence of temporal proximity "to rebut [the] defendant's proffered explanation" for an adverse action. *Jalil v. Avdel Corp.*, 873 F.2d 701, 709 n.6 (3d Cir. 1989). But it is neither clear nor obvious that temporal proximity can be enough to show pretext here given Sinico's repeated and pervasive failure to keep timely and accurate records, along with her history of other disciplinary infractions.

Third, Sinico argues that because "Barry and Tylwalk were impeached while testifying at their depositions," all of their testimony should be discredited. Opening Br. 24. But we do not assess credibility at the summary judgment stage, as we must resolve all disputed facts—and draw all reasonable inferences—in Sinico's favor. *See, e.g.*, *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) ("When deciding a motion for summary judgment, '[a]ll reasonable inferences from the record must be drawn in favor of the nonmoving party' and the court 'may not weigh the evidence or assess credibility.'" (quoting *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005))). Moreover, Sinico offers no support for her novel assertion that all of these witnesses' testimony should be excluded because they were impeached. *See also Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) ("It is well settled that a passing reference to an issue will not suffice to bring that issue before this Court." (cleaned up) (quoting *Kach v. Hose*, 589 F.3d 626, 642 (3d Cir. 2009))).

17

assist; and (4) [she] could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010)) (addressing failure-to-accommodate claim under the ADA); *see also Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) ("[I]n 1992[,] the Rehabilitation Act was amended to incorporate the standards of several sections of the ADA, including the section defining 'reasonable accommodation.'" (first citing 29 U.S.C. § 794(d); and then citing *Shiring v. Runyon*, 90 F.3d 827, 831–32 (3d Cir. 1996))).

Sinico has identified three accommodations that her employer failed to provide: (1) a two-week leave of absence following her embryo-transfer procedure in May 2017; (2) a less stressful workplace; and (3) some action to mitigate strong paint fumes that Sinico smelled in her office in June 2017.[12] It is neither clear nor obvious that Sinico has raised a genuine dispute of material fact about any of these accommodations.

---

[12] The complaint also alleges that about a week before she was terminated, Sinico "learned she was pregnant, notified her supervisors that she was pregnant, and requested . . . Christner and Penberth approve her request for an accommodation consisting of an additional week-long sick leave beginning in the second week of July 2017." J.A. 120. Sinico denied making this request during her deposition, appears to have abandoned that accommodation as a basis for relief below, and offers no arguments addressing that accommodation on appeal. Thus, we need not address whether Sinico has clearly and obviously raised a genuine dispute of material fact about whether Appellees violated the ADA or the Rehab Act by purportedly denying her request for another week of leave in July 2017. *See also Kahn v. United States*, 753 F.2d 1208, 1222 n.8 (3d Cir. 1985) ("As a matter of policy, we generally refuse to consider issues that are raised for the first time on appeal." (collecting cases)); *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d at 237 ("As a general matter, an appellant [forfeits] an argument in support of reversal if it is not raised in the opening brief." (citing *McCray*, 682 F.2d at 241)).

18

For example, Sinico's main argument about the two-week leave of absence seems to be that Appellees failed to take her request seriously and engage in the interactive process that the ADA and the Rehab Act require to determine whether a reasonable accommodation is possible. When an employee properly requests that their employer make an accommodation for a disability, "both parties have a duty to assist in the search for [an] appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999) (quoting *Mengine*, 114 F.3d at 420). "[T]he process must be interactive," this Court has explained, "because each party holds information the other does not have or cannot easily obtain." *Id.* at 316.

Even if we assume that Sinico properly requested an accommodation based on a disability when she met with Penberth on June 6, 2017, and asked to take two weeks off from work after her embryo-transfer procedure, there is no dispute that Penberth told Sinico that she could submit a doctor's note if she needed to take medical leave, and Sinico adduced no evidence that she submitted a doctor's note confirming that she needed to take two full weeks off from work for medical reasons. Thus, the interactive process broke down because *Sinico* failed to respond to her employer's request for more information. Accordingly, it is neither clear nor obvious that Sinico has raised a genuine dispute of material fact about whether Appellees violated the ADA or the Rehab Act by denying this accommodation.

The same basic analysis applies to the paint-fumes accommodation. Even if we assume that Sinico properly linked this request to a disability, Christner suggested that Sinico move offices and open a window. This did not fix the problem. But Sinico could

19

not recall sharing that information with Christner or another manager. Thus, the interactive process broke down with respect to this accommodation because Sinico failed to inform Appellees that moving offices and opening a window did not abate the paint fumes.

Finally, as the District Court noted below, Sinico's barebones request for a "less stressful" work environment appears to have been unreasonable as a matter of law. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580–81 (3d Cir. 1998). Thus, Sinico has not clearly and obviously demonstrated a genuine dispute of material fact about whether this accommodation was reasonable.

In sum, for the reasons provided above, we hold that the District Court did not plainly err by granting Appellees summary judgment on the failure-to-accommodate

claims because Sinico either failed to participate in the interactive process or requested a vague accommodation that appears to have been per se unreasonable.[13] [14]

## IV.  CONCLUSION

For the reasons discussed above, we will affirm the District Court's order granting Appellees summary judgment.

---

[13] When opposing summary judgment, Sinico also argued that she adduced evidence of intentional discrimination by showing that Appellees were deliberately indifferent to the denial of her rights under the FMLA, the ADA, and the Rehab Act.  For the reasons provided above, it is neither clear nor obvious that Sinico raised a genuine dispute of material fact about whether Appellees violated her rights under those statutes.  Thus, it is also neither clear nor obvious that Sinico raised a genuine dispute of material fact about whether Appellees knew that her rights were likely to be violated and failed to act.  *Cf. S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013) ("To satisfy the deliberate indifference standard, [a plaintiff] must present evidence that shows both:  (1) knowledge that a federally protected right is substantially likely to be violated . . ., and (2) failure to act despite that knowledge."  (emphasis removed) (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001))).

[14] Because we resolve these claims on the merits, we express no view on the District Court's analysis of whether Sinico properly exhausted administrative remedies before bringing claims under the ADA.